Edward E. Yates, Esq.  SB#135138
Law Office of Edward E. Yates
2060 Sutter Street, #403
San Francisco, CA 94115
Telephone:  (415) 990-4805
Email:  eyates@marinlandlaw.com

Adam D. Brumm, Esq.  SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA  95616
Telephone: (800) 545-7215, Extension 906
Email:  adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>NUTRIEN AG SOLUTIONS, INC., a California corporation; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:23−CV−00943−KJM−CKD<br><br>**STIPULATION TO DISMISS ENTIRE ACTION AGAINST ALL DEFENDANTS WITH PREJUDICE; ORDER GRANTING DISMISSAL WITH PREJUDICE**<br><br>**FRCP 41(a)(2)** |

　　　Plaintiff Central Valley Eden Environmental Defenders, LLC ("Plaintiff") and Defendant Nutrien AG Solutions, Inc. ("Defendant"), hereby enter into this Stipulation to Dismiss Plaintiff's Complaint and all claims against all Defendants with prejudice.

STIP to DISMISS – Page 1

WHEREAS, Plaintiff and Defendant (the "Parties") have entered into a settlement agreement that achieves a full and final settlement of all Plaintiff's claims against Defendant as set forth in the Complaint filed in this matter on May 19, 2023 (Docket No. 1).

WHEREAS, on October 12, 2023, the Parties filed a Notice of Settlement notifying the Court that the Parties had reached a full settlement to resolve all outstanding issues in this action ("Settlement Agreement").

WHEREAS, on October 18, 2023, Plaintiff served a copy of the Settlement Agreement on the Department of Justice ("DOJ") for a mandatory 45-day review period under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5.  All interested parties agree that the expiration date of the 45-day review period was December 4, 2023.

WHEREAS, the Parties' Notice of Settlement specified that upon the expiration of the DOJ's review period, if no objection was lodged by the DOJ, the Settling Parties would stipulate to and request an order from this Court dismissing with prejudice Plaintiff's claims as to Defendant.

WHEREAS, the statutory agency review period has expired without any objection being lodged by the DOJ.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the Parties that Plaintiff's Complaint and all claims against Defendant shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

The Parties respectfully request an order from this Court dismissing such claims with prejudice, with each side to bear their own attorney fees and costs, except as provided for by the terms of the Settlement Agreement attached hereto as **Exhibit A**.

.

Dated: December 11, 2023                          Respectfully,

                                                  By: __/S/ Edward E. Yates_____
                                                      Edward E. Yates
                                                      Attorney for Plaintiff

Dated: December 11, 2023                          Respectfully,

                                                  By: __Tiffany R. Hedgpeth_____
                                                      Tiffany R. Hedgpeth
                                                      Attorney for Defendant

**ORDER**

Good cause appearing, and the parties having stipulated and agreed, IT IS HEREBY ORDERED as follows:

The Complaint filed in this matter by plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, and all claims against defendant NUTRIEN AG SOLUTIONS, INC. are hereby dismissed in their entirety, with prejudice.

Each party is to bear their own attorney fees and costs, except as provided for in the settlement agreement executed by the parties on October 18, 2023, a copy of which is attached hereto as **Exhibit A.**  However, the court in its discretion declines to maintain jurisdiction to enforce the terms of the parties' settlement agreement.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *cf. Collins v. Thompson*, 8 F.3d 657, 659 (9th Cir. 1993).  Unless there is some independent basis for federal jurisdiction, enforcement of the agreement is for the state courts.  *Kokkonen*, 511 U.S. at 382.

IT IS SO ORDERED.

Dated:  January 4, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Central Valley Eden Environmental Defenders, LLC ("EDEN"), on behalf of itself and its members, and Nutrien Ag Solutions, Inc. ("Nutrien Ag Solutions").  EDEN and Nutrien Ag Solutions are hereinafter each referred to as a "Party" or collectively as the "Parties."

## RECITALS

A. WHEREAS, EDEN is an environmental citizen's group organized under the laws of the State of California, dedicated to protect, enhance, and assist in the restoration of all rivers, creeks, streams, wetlands, vernal pools, and tributaries of California, and the United States.

B. WHEREAS, Nutrien Ag Solutions operates a facility that distributes and/or mixes fertilizers, pesticides and fungicides.  The facility is located at 1905 North Broadway Avenue in Stockton, California ("Facility").

C. WHEREAS, EDEN contends the Facility is subject to various federal and state regulatory requirements, including compliance with the Federal Clean Water Act ("CWA") through the General Industrial Storm Water Permit issued by the State of California (NPDES General Permit No. CAS000001) [State Water Resources Control Board ("SWRCB")] Water Quality Order No. 2014-0057-DWQ, as amended by Orders 2015-0122-DWQ and 2018-XXXX-DWQ (hereinafter "General Permit").  The Facility is currently not covered under the General Permit.

D. WHEREAS, on August 4, 2022, EDEN served Nutrien Ag Solutions with a 60-Day Notice of Violations and Intent to File Suit ("Notice Letter") alleging various violations of the CWA and the General Permit relating to activities at the Facility.  A copy of the Notice Letter is attached hereto as **Exhibit A**.

E. WHEREAS, on or about May 19, 2023, EDEN filed a Complaint in U.S. District Court for the Eastern District of California against Defendant Nutrien Ag Solutions (Civil Action No. 2:23−CV−00943−KJM-CKD) ("Complaint").

F. WHEREAS, Nutrien Ag Solutions denies all allegations and claims contained in the Complaint and Notice Letter and reserves all rights and defenses with respect to such allegations and claims.

G. WHEREAS, the Parties have expended effort and resources in investigating and evaluating the allegations and claims set forth in the Notice Letter and Complaint, as well as engaging in negotiations regarding settlement.

H.  WHEREAS, the Parties believe it is in their mutual interest to now resolve in full through settlement EDEN's allegations set forth in the Notice Letter and Complaint, to avoid the cost and uncertainties of further litigation.

NOW, THEREFORE, for good and valuable consideration through the execution of this Agreement and the releases, satisfactions and promises made herein, the Parties hereby agree as follows:

## TERMS AND CONDITIONS

1. **Parties Bound By This Agreement**. This Agreement, and each of its provisions, including all representations, warranties, and promises contained herein, binds, and inures to the benefit of EDEN and Nutrien Ag Solutions and each of their respective assigns, present and future operators, affiliates, parents, subsidiaries, predecessors, and successors in interest whether by merger, consolidation, or amalgamation, as well as their respective representatives, agents, members, officers, and administrators, past, present, and future.

2. **Effective Date**. The "Effective Date" of this Agreement is the last day for the U.S. Department of Justice to provide comment, i.e., the 45th day following the U.S. Department of Justice's receipt of the Agreement.

3. **Term**. The "Termination Date" shall be three (3) years from the Effective Date, at which time the Agreement, and all obligations under it, shall automatically terminate.

4. **Actions Required by EDEN:**

    A.  Within three (3) business days of receiving all the Parties' signatures to this Agreement, EDEN shall submit this Agreement to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.

    B.  Within three (3) days of the mutual execution of this Agreement, EDEN shall submit a Notice of Settlement to the Northern District Court.

    C.  Within seven (7) days of the expiration of the 45-day agency review period described above, the Parties shall execute a joint Stipulation for Dismissal, and EDEN shall submit same to the Court with a proposed Order.

    D.  The Stipulation for Dismissal shall provide that the Complaint and all claims against Defendant shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2); and that the Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Agreement, which shall be attached thereto and fully incorporated by reference, through the Termination Date. Nothing in this Agreement shall be construed as a waiver of any Party's right to appeal from an order that arises from a motion to enforce the terms of this Agreement.

5. **Actions Required By Nutrien Ag Solutions**.  In exchange for the delivery, execution, and performance of this Agreement and of the releases by EDEN as provided herein, Nutrien Ag Solutions shall perform the below-specified mitigation activities with respect to the Facility, within the term of this Agreement.  Nutrien Ag Solutions shall have the right, in its sole discretion, to determine (i) which persons shall perform any work described herein, including Nutrien Ag Solutions' employees or third-party contractors or consultants; and (ii) the scope and technical details of, and manner to implement, any such work.

**SPECIFIC MITIGATION ACTIONS TO BE TAKEN BY NUTRIEN AG SOLUTIONS**

5.1   *Application for Coverage under the General Permit*

Within sixty (60) calendar days of the Effective Date, Nutrien Ag Solutions shall complete the following tasks to obtain coverage under the General Permit:

(a)  Navigate to the California State Water Resources Control Board SMARTS website located at [California Storm water Multiple Applications and Report Tracking System](#);

(b)  Create a SMARTS Account;

(c)  Complete all required data in SMARTS to apply for standard Notice of Intent General Permit coverage and pay the required fees; and

(d)  Upload all required Permit Registration Documents, including a SWPPP and Site Map compliant with Section 5.4 herein.

5.2 *Storm Water Monitoring, Sample Collection and Analysis*

A.  *Storm Water Sample Collection and Analysis*

1. Nutrien Ag Solutions shall collect and analyze storm water samples from the Facility, from the Effective Date to the Termination Date, from Qualifying Storm Events ("QSEs"), at the times and frequencies required by the General Permit; specifically, two (2) samples in the first half of each reporting year (July 1-December 31) and two (2) in the second half of each reporting year (January 1-June 30).

2. "QSE", as defined herein is any rain event that is preceded by 48 hours with no discharge from any drainage area and which produces a measurable and collectible discharge at any of the Facility's industrial discharge locations

    ("Sampling Locations") identified in Nutrien Ag Solutions' SWPPP and Facility Map.

3. Nutrien Ag Solutions shall ensure that the collection, preservation, and handling of these storm water samples are in accordance with *General Permit Attachment H, Storm Water Sample Collection and Handling Instructions* and its SWPPP.

4. Samples are to be collected from all Sampling Locations identified in Nutrien Ag Solutions' SWPPP and Facility Map where a discharge occurs. The Sampling Locations must be representative of storm water associated with industrial activities and any commingled authorized NSWDs; or associated with any discharge of contained storm water.

5. Nutrien Ag Solutions may, in its sole discretion, modify the Sampling Locations in accordance with its SWPPP, and such modification(s) shall not be a breach of this Agreement.

6. Stormwater samples from each Sampling Location shall be collected within four (4) hours of:

    a) The start of the discharge (including discharge of collected and treated storm water); or

    b) The start of facility operations if the QSE occurs within the previous 12-hour period (e.g., for storms with discharges that begin during the night for facilities with day-time operating hours). Sample collection is required during scheduled facility operating hours and when sampling conditions are safe pursuant to Section XI.C.6.a.ii. of the General Permit.

7. All stormwater samples collected from the Facility are to be analyzed for the following parameters: Total Suspended Solids (TSS), Oil and Grease (O&G) and pH; Iron, Nitrate+Nitrite (N+N), Lead, Zinc and Phosphorus.

8. Further, Nutrien Ag Solutions shall analyze its stormwater samples for any additional sampling parameter identified in its SWPPP's Pollutant Source Assessment, pursuant to Sections X.F, X.G and XI.B.6.c of the General Permit as well as any additional parameters required by the Water Board or the General Permit.

9. Samples are to be forwarded within forty-eight (48) hours of collection to a California ELAP-certified analytical laboratory selected by Nutrien Ag Solutions in its sole discretion.

10. Nutrien Ag Solutions shall upload to the State Water Resources Control Board Stormwater Multiple Application and Report Tracking System ("SMARTS") all sample analyses received from its analytical laboratory, within thirty (30) days of receipt of the sampling data.

5.3 *Mitigation of Potential Exceedances*

(a) In the event that the sample analyses of Nutrien Ag Solutions' storm water samples collected pursuant to Section 5.2 above, indicate results for the tested parameters that exceed either the instantaneous or annual Numeric Action Levels ("NAL") levels listed in Table 2 of the General Permit attached hereto as **Exhibit B**, Nutrien Ag Solutions agrees to work with its designated Qualified Industrial Storm Water Practitioner ("QISP"), as that term is defined by the General Permit, or other environmental professional to review Nutrien Ag Solutions' housekeeping practices and Best Management Practices ("BMPs"), and if necessary revise its SWPPP in order to reduce its analyzed pollutant parameters, and to provide training and consultation to achieve that objective, and to follow the provisions set forth in Section XII of the General Permit related to required Exceedance Response Actions, if required.

(b) In the event that Nutrien Ag Solutions' storm water samples indicate sampling parameter not specified in Table 2 of the General Permit exceed receiving water limitations as described in Section VI of the General Permit, Nutrien Ag Solutions shall comply with the Water Quality Based Corrective Actions set forth in Section XX.B of the General Permit, including the preparation of a Water Quality Based Corrective Action Report.

5.4 *Best Management Practices*

Nutrien Ag Solutions shall develop and implement technologically and economically achievable BMPs necessary to prevent and/or reduce contamination in its stormwater discharges, consistent with use of BAT and BCT, as required by the General Permit.

In addition to those minimum and advanced BMPs specified in its current SWPPP, Nutrien Ag Solutions agrees to implement and maintain the following BMPs at the Facility:

(a) Sweeping: Loading and unloading of dry fertilizer, if any, shall be performed over a load pad. Spilled fertilizer shall be cleaned up daily via sweeping, use of sump pumps, or manual washing. Any water generated shall be contained and properly reused or disposed of offsite.

(b) Vehicle Maintenance: Conduct all vehicle maintenance within a contained area and in accordance with written standard operating procedures.

(c) <u>Vehicle Fueling</u>:  Conduct outdoor vehicle fueling in accordance with written standard operating and incident procedures and in compliance with all local, state or federal laws or ordinances.

(d) <u>Vehicle Storage</u>:  Facility vehicles shall be regularly maintained. .Any grease/oil leaks/product leaks or stains caused by vehicles shall be cleaned up upon discovery.

(e) <u>Outdoor Storage of Materials, Scrap and Equipment</u>:  Within sixty (60) days of the Effective Date of this Agreement, complete an evaluation of all outdoor storage of industrial materials, miscellaneous equipment, tools, scrap metals, parts, and all other materials stored outdoors.  To the extent that any of the foregoing is obsolete, no longer utilized in Facility operations, trashed, discarded as waste, or otherwise extraneous or unnecessary, Nutrien Ag Solutions shall dispose of same in a lawful and timely manner.

(f) <u>Trash and Debris:</u> Cover or close all waste receptacles when not in use and prior to rain events; and dispose of on-Facility trash and debris properly and in a timely manner.

(g) <u>Secondary Containment</u>:  Except for what may be stored in vehicles, store all petroleum-based materials and petroleum-based wastes and all chemicals which have the potential to come into contact with rainfall or stormwater runoff indoors, or within secondary containment having a volume of at least 110 percent of the contents of the largest vessel stored within the containment.

(h) <u>Dust Minimization</u> Utilize appropriate dust minimization BMPs during windy conditions.

5.5 *<u>Storm Water Pollution Prevention Plan</u>*

Within thirty (30) days of the Effective Date of this Agreement, Nutrien Ag Solutions shall engage a professional Environmental Consultant or QISP to prepare a Storm Water Pollution Prevention Plan (SWPPP) and Facility Map to comport with the requirements set forth in Section X of the General Permit.

The SWPPP and Site Map revisions shall include the results of the Technical Report referenced in Section 5.1.A herein and shall be finalized and uploaded to SMARTS within sixty (60) days of the Effective Date.

A.  Nutrien Ag Solutions shall prepare a SWPPP which includes the following, and shall upload to SMARTS within thirty (30) days a revised SWPPP whenever any of the following has been modified or is no longer accurate:

1. Complete <u>Facility information</u>, including location (street address), the current Facility operator and the current legal name of the business entity owner/operator; Facility WDID number (IGP Sections II.A, II.C, X.A.1, XXI.K, XXI.R);

2. Current scheduled <u>Facility operating hours</u>, including temporary, intermittent, seasonal and weather dependent hours, if applicable (IGP Section X.D.2.d);

3. If the Facility plans to temporarily suspend industrial activities for ten (10) or more consecutive calendar days during the term of this Agreement, Nutrien Ag Solutions shall include in the SWPPP a statement of <u>Temporary Suspension of Industrial Activities</u>, along with the approximate dates of suspension, and shall also include a list of all BMPs necessary to achieve compliance with the General Permit during the period of suspension (IGP Section X.H.3);

4. The name and title of the Facility's current <u>Legally Responsible Person</u> (LRP), and a certification page signed by the Facility's current LRP.  The certification page shall include a statement that the LRP is eligible to be the Facility's LRP, pursuant to Section XXI.K of the General Permit (IGP Sections II.A, II.B, XXI.K, XXI.L);

5. Detailed information regarding the Facility's <u>Pollution Prevention Team</u> members, to include the names and titles of all members; and the responsibilities, duties and activities of each of the team members, including the names of team members assigned to conduct monitoring requirements.  The Facility's Pollution Prevention Team must include at least one team member who is present at the Facility on a full-time basis and may not be comprised solely of third-party environmental consultants or regional environmental managers/compliance officers (IGP Sections X.D.1, X.I.1);

6. The date that the SWPPP was initially prepared and the date of each SWPPP Amendment, to be set forth in an updated <u>Amendment Log.</u>  The Amendment Log shall include exact dates (rather than just a month and year), and the SWPPP shall accurately represent the date of its preparation and implementation, which should closely correspond with the date the SWPPP is certified and submitted to SMARTS (IGP Sections II.D.1.a, X.A.10, X.B);

7. If any part of an <u>existing plan</u>, procedure or regulatory compliance document relating to General Permit requirements is incorporated in the SWPPP (such as a Hazardous Materials Business Plan), the original source shall be properly referenced (IGP Section X.D.2);

8. A detailed discussion of all <u>Facility operations and industrial processes</u>, including manufacturing, cleaning, maintenance, recycling, disposal and any other activities related to all industrial processes; material handling activities (storage, loading